IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-03697-PAB

LUIS ANTONIO FLOREZ MARIN,

    Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden of the Aurora ICE Processing Center,
ROBERT HAGAN, in his official capacity as Field Office Director of the Denver Field Office of Enforcement and Removal Operations, U.S. Immigrations and Customs Enforcement,
TODD M. LYONS, in his official capacity as Acting Director, Immigration and Customs Enforcement,
KRISTI NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security, and
PAMELA JO BONDI, in her official capacity as Attorney General of the United States,

    Respondents.

---

## ORDER

---

This matter comes before the Court on petitioner Luis Antonio Florez Marin's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief [Docket No. 2]. Respondents filed a response. Docket No. 8. Petitioner filed a reply. Docket No. 10.

I. **BACKGROUND**

Petitioner is a citizen of Mexico. Docket No. 2 at 11, ¶ 43. He entered the United States without inspection on June 16, 2023 in El Paso, Texas.[1] *Id.* at 2, ¶ 3. On November 6, 2025, United States Immigration and Customs Enforcement ("ICE") apprehended petitioner in Colorado Springs, Colorado. *Id.* at 11, ¶ 47. Before his apprehension by ICE, petitioner had never been charged with a crime. *Id.* at, ¶ 46. ICE issued petitioner a Notice to Appear, initiating removal proceedings under 8 U.S.C. § 1229(a). Docket No. 8-1 at 2-3, ¶ 11. The Notice to Appear charges petitioner with being inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* Respondents claim that petitioner is being held pursuant to 8 U.S.C. § 1225(b)(2)(A). Docket No. 2 at 3, ¶ 6; Docket No. 8-1 at 2, ¶ 10.

On November 18, 2025, petitioner had an initial hearing in his removal proceedings before an immigration judge where he requested time to hire an attorney. Docket No. 8-1 at 3, ¶ 12. On December 2, 2025, petitioner and his counsel appeared before the immigration judge for a master calendar hearing. *Id.*, ¶ 13. Petitioner had another hearing scheduled on December 16, 2025 for the purpose of entering a plea on the Notice to Appear. *Id.*, ¶ 14. Petitioner is currently detained at the Denver Contract Detention Facility in Aurora, Colorado. Docket No. 2 at 11, ¶ 48. Petitioner has not had a bond hearing. *See generally* Docket No. 8-1.

Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Docket No. 2. Petitioner brings a claim for Unlawful Denial of Release on Bond

---

[1] The only evidence that petitioner entered the United States without inspection on June 16, 2023 is the habeas petition that alleges as much. However, respondents do not contest this statement.

pursuant to 8 U.S.C. § 1226(a) (Count I); a claim for Violation of Bond Regulations and Unlawful Denial of Release on Bond (Count II); and a claim for Violation of Fifth Amendment Right to Due Process (Claim III).  Docket No. 2 at 11-13.  Petitioner seeks a declaration that his detention is unlawful, a Writ of Habeas Corpus ordering respondents to release petitioner or to provide him with a bond hearing within seven days, an order that he not be transferred outside the District of Colorado, and attorney's fees.  *Id.* at 14.

II. **ANALYSIS**

A. **Counts I and II: Violation of 8 U.S.C. § 1226 and Bond Regulations**

The parties disagree on the statutory scheme that controls petitioner's detention. Petitioner contends that his detention should be controlled by 8 U.S.C. § 1226 because § 1226 applies to the detention of noncitizens, like petitioner, "who entered without inspection and were later apprehended in the interior of the country."  *Id.* at 8, ¶ 35. Because he believes that § 1226 applies, petitioner argues that respondents must release him or provide him a bond hearing.  *See id.* at 14.  Respondents, however, contend that 8 U.S.C. § 1225(b)(2)(A) applies to petitioner, and petitioner is therefore not entitled to a bond hearing, but is rather subject to mandatory detention.  *See* Docket No. 8 at 4-13.

The Immigration and Nationality Act ("INA") "contemplates two detention regimes for noncitizens pending removal proceedings," one controlled by § 1225 and one controlled by § 1226.  *Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643, at *3 (D. Colo. Oct. 24, 2025) (citation omitted).  Section 1225 mandates detention pending removal proceedings, providing that, "if the examining immigration

3

officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). Unless certain exceptions are present, as provided for in §§ 1225(b)(2)(B) and (C), § 1225 "mandates detention without the opportunity for a bond hearing for the noncitizens to whom it applies." *Hernandez*, 2025 WL 2996643, at *3. Section 1226, on the other hand, does not mandate detention, providing that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Under § 1226(a)(2), the Attorney General has the discretion to release a noncitizen on bond while removal proceedings are pending. 8 U.S.C. § 1226(a)(2). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

Respondents argue that *Jennings* "supports concluding that 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens who entered without inspection and remain unlawfully present." Docket No. 8 at 4. "[A] proper understanding of the relevant statutes, in light of their plain text, overall structure, and uniform case law interpreting them, compels the conclusion that § 1225's provision for mandatory detention of noncitizens 'seeking admission' does not apply to someone like [petitioner], who has been residing in the United States for more than two years." *Mendoza Gutierrez v. Baltasar*, No. 25-cv-2720-RMR, 2025 WL 2962908, at *5 (D. Colo. Oct. 17, 2025) (citation omitted) (collecting cases). The Court disagrees with respondents' contention that *Jennings* supports a different conclusion. The Supreme Court in *Jennings* held that, "[i]n sum, U.S. immigration law authorizes the Government to detain certain aliens

4

*seeking admission* into the country under §§ 1225(b)(1) and (b)(2)" and that "[i]t also authorizes the Government to detain certain aliens *already in the country pending the outcome of removal proceedings* under [] § 1226(a)." *Jennings*, 583 U.S. at 289 (emphasis added). Therefore, *Jennings* distinguishes between noncitizens seeking admission, who are subject to § 1225, and noncitizens who are already present in the country, who are subject to § 1226.

Respondents' argument that § 1225(b)(2)(A) applies to noncitizens already residing in the United States is contrary to the plain language of § 1225. "The weight of authority interpreting § 1225 has recognized that for section 1225(b)(2)(A) to apply, several conditions must be met – in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *See Loa Caballero v. Baltazar,* No. 25-cv-03120-NYW, 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025). (internal quotation and citation omitted) (quoting 8 U.S.C. § 1225(b)(2)(A)). Section 1225(b)(2)(A)'s requirement that an applicant for admission be "seeking admission" "requires that the applicant must be presently and actively seeking lawful entry into the United States." *Id.* Therefore, noncitizens who "have been here for years upon years and never proceeded to obtain any form of citizenship . . . are not 'seeking' admission" as defined in § 1225(b)(2)(A). *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025). While these kinds of noncitizens, like petitioner, "may technically be a noncitizen present in the United States who has not been admitted [making] them an applicant for admission," that does not mean that they are "seeking admission." *See id.* (internal quotations omitted). Respondents point to § 1225(b)(1)(A)(i) for the proposition

5

that "both those just arriving in the United States and those who entered without inspection and have been residing here" are subject to § 1225.  *See* Docket No. 8 at 5.  Section 1225(b)(1)(A)(i) provides:

> If an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review.

8 U.S.C. § 1225(b)(1)(A)(i).

Respondents argue that § 1225(b)(1)(A)(i)'s reference to § 1225(b)(1)(A)(iii), which in turn references noncitizens who have "*already* been residing here and are inadmissible," demonstrates that § 1225 is applicable to noncitizens like petitioner.  *See* Docket No. 8 at 5-6.  However, § 1225(b)(1)(A)(i) and (iii) are "better understood as carve outs for the 'certain other aliens' that do not fall into § 1225's otherwise general application to *arriving* [non]citizens."  *Hernandez*, 2025 WL 2996643, at *6 (citing 8 U.S.C. § 1225(b)(1)).  Respondents also rely on 8 U.S.C. § 1225(a)(3) for the proposition that "a noncitizen can seek admission simply by meeting the definition of an applicant for admission or can 'otherwise' seek admission by directly applying for admission."  Docket No. 8 at 6.  Section 1225(a)(3) states that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."  8 U.S.C. § 1225(a)(3).  Again, respondents' argument fails to account for the fact that, in order for § 1225(b)(2)(A)'s mandatory detention provision to apply, it is not enough for a noncitizen to be an applicant for admission; he must also be seeking admission.  Furthermore, to the extent respondents argue that an applicant for admission is necessarily seeking admission, "[t]he 'otherwise seeking admission' language is simply

6

a catch-all provision to describe individuals seeking admission and subject to inspection who may not fit the definition of 'applicant for admission,' such as a person not currently present in the United States." *See Loa Caballero*, 2025 WL 2977650, at *6 n.4.

The INA's legislative history does not support the conclusion that petitioner's detention is controlled by § 1225. Petitioner contends that Congress enacted the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA") to "stop conferring greater privileges and benefits on those who entered the United States unlawfully as compared to those who lawfully present themselves for inspection at a port of entry." Docket No. 8 at 9. However, "when Congress enacted the IIRIRA, it 'did not fully disrupt the old system, including the system of detention and release' on bond." *Hernandez*, 2025 WL 2996643, at *7 (quoting *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025) ("Congress' concern about adjusting the law in some respects to reduce inequities in the removal process did not mean Congress intended to entirely up-end the existing detention regime by subjecting all inadmissible noncitizens to mandatory detention, . . . a seismic shift in the established policy and practice of allowing discretionary release under Section 1226(a) – the scope of which Congress did not alter.") (internal quotations omitted)).

Contrary to respondents' assertion, Congress's amendment of § 1226 supports petitioner's argument that § 1226 applies to him rather than § 1225(b)(2)(A). *See* Docket No. 2 at 9-10, ¶ 38; Docket No. 8 at 10-12. In January 2025, Congress amended § 1226, adding § 1226(c)(1)(E). *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). Section 1226(c)(1)(E) provides that the "Attorney General shall take into custody any alien who –"

7

> (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E). Section 1226(c)(1)(E), as respondents concede, "mandates detention for a narrow category of noncitizens who entered the country without inspection: those who both entered without inspection and were later arrested for, committed, or have admitted to committing one of a list of enumerated crimes." Docket No. 8 at 11. This provision would be meaningless if noncitizens already residing in the United States were all subject to mandatory detention under § 1225(b)(2). *See Salcedo Aceros*, 2025 WL 2637503, at *10 ("If Congress amended Section 1226 to create mandatory detention for certain inadmissible noncitizens, it follows that those noncitizens were not already subject to mandatory detention."). While respondents contend that "[t]he Court should not read a partial overlap between § 1226(c) and § 1225(b)(2)(A) to require courts to ignore the express scope of § 1225," as the Court has already found, the scope of § 1225 does not cover noncitizens like petitioner. *See* Docket No. 8 at 12.

For the foregoing reasons, "federal district courts have overwhelmingly rejected Respondents' broad interpretation of section 1225(b)(2)." *See Loa Caballero*, 2025 WL 2977650, at *5 (internal quotation and citation omitted) (collecting cases). The Court

agrees with the weight of the authority finding that petitioner's detention is controlled by § 1226(a) and not by § 1225(b)(2)(A).

Accordingly, the Court finds that petitioner is being detained under 8 U.S.C. § 1226(a). Because there is no evidence that petitioner has been provided a bond hearing, his current detention violates § 1226(a). The Court will grant the habeas petition on Counts I and II and order respondents to provide petitioner a bond hearing within seven days of the date of this order.[2] *See Garcia Cortes v. Noem,* No. 25-cv-02677-CNS, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (ordering respondents to provide a bond hearing within seven days of the court's order granting the habeas petition); *Loa Caballero*, 2025 WL 2977650, at *1 (same); *Hernandez*, 2025 WL 2996643, at *8 (same). While petitioner alleges that "[a]n Immigration Judge is currently unable to consider the Petitioner's bond request as the Immigrations Court's jurisdiction to grant bond has been effectively stripped under *Matter of Yajure Hurtado*," such allegation is belied by his request that he be provided with a bond hearing pursuant to 8 U.S.C. § 1226(a). *See* Docket No. 2 at 11, 14 ¶ 49. Moreover, other petitioners have been afforded a bond hearing post-*Hurtado*. *See, e.g.*, *Garcia Cortes v. Noem,* Case No. 25-cv-02677-CNS, Docket No. 9 (D. Colo. Sept. 25, 2025); *Loa Caballero v. Baltazar*, Case No. 25-cv-03120-NYW, Docket No. 19 (D. Colo. Nov. 5, 2025); *Hernandez v. Balatazar*, Case No. 25-cv-03094-CNS, Docket No. 27 (D. Colo. Nov. 3,

---

[2] Because the Court will grant the habeas petition on the basis of Counts I and II, it will not reach Count III, petitioner's due process claim. See *Hernandez*, 2025 WL 2996643, at *8 ("the Court declines to adjudicate Petitioner's due process claim on the merits at this time because the Court grants the relief Petitioner seeks based on the applicability of § 1226(a)").

2025). Therefore, rather than order petitioner's release, the Court will order respondents to provide petitioner a bond hearing within seven days of the date of this order. *Loa Caballero*, 2025 WL 2977650, at *9 ("The Court finds that an immigration judge is better suited to consider whether Petitioner poses a flight risk and a danger to the community in this instance, where there is an insufficient record before this Court.").

### B. Additional Relief

In addition to being granted a bond hearing, petitioner requests that the Court order that respondents are not to transfer petitioner outside the District of Colorado. Docket No. 2 at 14. The Court will deny this relief without prejudice because petitioner does not provide a basis for his request. *See id.* Plaintiff requests a "declar[ation] that his detention is unlawful." *Id.* A "declaratory relief claim is moot if the relief would not affect the behavior of the defendant toward the plaintiff." *Robert v. Austin*, 72 F.4th 1160, 1164 (10th Cir. 2023) (citation omitted). However, such claims are not moot if "(1) secondary or collateral injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Riley v. I.N.S.*, 310 F.3d 1253, 1257 (10th Cir. 2002) (internal quotation and citations omitted). A declaration that petitioner's detention was unlawful would not affect respondents' behavior toward petitioner now that the Court has ordered respondents to provide petitioner with a bond hearing. *See Vaupel v. Ortiz*, 244 F. App'x 892, 896 (10th Cir. 2007) (holding that petitioner's declaratory claims for relief were moot after petitioner's release and deportation, declining "to issue an advisory opinion regarding the legality of [petitioner's] detention, because a declaratory

10

judgment on that question would have no meaningful effect on the Department of Homeland Security's future conduct towards him") (internal quotation, alteration, and citation omitted).

As for petitioner's request for attorney's fees, the Court will not consider the request because petitioner fails to comply with the Local Rules of the District of Colorado. A motion for attorney fees must be filed in accordance with D.C.COLO.LCivR 54.3. *See* D.C.COLO.LCivR 54.3 ("Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit. . . . The Motion shall include . . . for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.").

### III.  CONCLUSION

Therefore, it is

**ORDERED** that Luis Antonio Florez Marin's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief [Docket No. 2] is **GRANTED**. It is further

**ORDERED** that respondents shall provide petitioner with a bond hearing under 8 U.S.C. § 1226(a) within **seven days** of the date of this Court's order. It is further

**ORDERED** that within **five days** of petitioner's bond hearing, the parties shall file a status report indicating whether the bond hearing was held and whether bond was granted or denied.

DATED December 18, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge